UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 11-32-GWU


BOBBIE RAE HERALD,                                                    PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

        Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the

ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

and analyze factors such as residual functional capacity, age, education and work

experience.

One of the residual functional capacity levels used in the guidelines, called

"light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing.  20 C.F.R. §

404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."
<u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional
impairment is significant, the Commissioner may still use the rules as a framework
for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);
however, merely using the term "framework" in the text of the decision is insufficient,
if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>.
In such cases, the agency may be required to consult a vocational specialist.
<u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial
evidence to support the Commissioner's decision may be produced through reliance
on this expert testimony only if the hypothetical question given to the expert
accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v.
Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Bobbie Rae Herald, was found by an Administrative Law Judge
(ALJ) to have a "severe" impairment consisting of degenerative disc disease of the
lumbar spine with chronic back pain.  (Tr. 13).  Nevertheless, based in part on the
testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Herald retained
the residual functional capacity to perform a significant number of jobs existing in
the economy, and therefore was not entitled to benefits.  (Tr. 15-21).  The Appeals
Council declined to review, and this action followed.

5

11-32  Bobbie Rae Herald

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, with the option of sitting or standing after 30 to 45 minutes, and also had the following non-exertional restrictions. She: (1) could never crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch and climb ramps and stairs; (3) could no more than "frequently" push, pull or use foot controls with the left lower extremity; and (4) needed to avoid concentrated exposure to full body vibration. (Tr. 68-9). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 69).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there is an error of law.

The plaintiff alleged disability due to "slipped" and ruptured discs in her back, nerve damage, depression, and attention deficit hyperactivity disorder. (Tr. 157). The ALJ found only her back condition to be a "severe" impairment.

The plaintiff raises three issues on appeal. First, she argues that the opinion of her treating neurologist, Dr. John Kelly, was entitled to controlling weight. Second, she asserts that she was "severely" impaired by depression, and the ALJ should have ordered a consultative psychological examination. Third, she challenges the ALJ's finding that she was non-compliant with treatment. This

6

argument is bound up with the ALJ's reasoning in discounting the treating source, so the first and third arguments may be considered as one.

Medical records in the transcript show that after suffering from low back pain for several months, the plaintiff had an MRI of the lumbosacral spine showing herniations at L4-L5 and L5-S1.   Dr. Steven C. Bailey performed a lumbar laminectomy and diskectomy at these levels on February 21, 2006.  (Tr. 297-301, 27-50).  Her symptoms returned, however, with an EMG showing left radiculopathy and an MRI showing a recurrent disc herniation at L4-L5.  (Tr. 266).  In addition, the second MRI, dated June 27, 2006, was interpreted as showing a "protrusion or herniation" at L3-L4 causing mild left foraminal stenosis and a laminectomy defect at L5-S1 with granulation tissue around the nerve root at S1.  (Tr. 262).  Another surgeon, Dr. Michael Rohmiller, performed a revision diskectomy at L4-L5 on September 8, 2006.  (Tr. 224-5).  At discharge, the plaintiff's lower extremity pain was significantly diminished.  (Tr. 304).  At a followup visit in January, 2007, Mrs. Herald reported that she felt much better and she was quite pleased with the operation, although she had developed some paraspinal muscle spasm as a result of taking care of three ill family members.  (Tr. 319).

At this point, on March 19, 2007, a state agency physician, Dr. David Swan, reviewed the evidence and concluded that the plaintiff could perform "light" level exertion, could never climb ladders, ropes, and scaffolds, occasionally stoop, kneel,

crouch, and crawl; and needed to avoid concentrated exposure to vibration.  (Tr. 348-54).   He appeared to base his opinion, to a considerable extent, on her condition at the time of Dr. Rohmiller's January 8, 2007 examination.  (Tr. 349, 352).  There was no treating source opinion regarding physical capacities at the time.  (Tr. 353).

Subsequently, however, on May 18, 2007, Mrs. Herald reported to Dr. Rohmiller that she had experienced a recurrence of her symptoms.  His examination showed a diminished sensation to light touch in the L2, L4, L5 and S1 dermatomes, seemingly positive straight leg raising on the left, and some weakness also.  (Tr. 390).  X-rays showed significant loss of height at L4-L5 and L5-S1.  Dr. Rohmiller noted that if she was not able to improve by non-operative means, "she would be looking at a spinal fusion."  (Id.).  He requested that she have a new MRI scan and come back with the results.  (Id.).  This was Mrs. Herald's last recorded visit to the surgeon.

Mrs. Herald had been receiving pain management services from Dr. John Kelly and other sources at Neuroscience Associates of Northern Kentucky since August 1, 2006.  (Tr. 415).  On March 23, 2008, Dr. Kelly wrote a letter summarizing his patient's treatment, adding that she had elected not to have a fusion because "this surgery tends to have a poor outcome."  (Tr. 377).  He diagnosed lumbar post-laminectomy syndrome, also known as failed back syndrome, and provided

restrictions of lifting no more than five pounds infrequently, no pushing or pulling of more than ten pounds infrequently, no bending, stooping, crawling, or climbing of stairs, stepstools, or ladders, sitting three to four hours per day (no more than 30 minutes at a time), standing one hour per day (no more than 10 minutes at a time), and he prohibited operation of a motor vehicle or moving machinery within four hours of taking pain medication.  He felt her pain would frequently interfere with her concentration and she would miss work more than four times per month.  (Tr. 378-79).  Dr. Kelly reiterated even more extensive restrictions in a report dated March 18, 2009.  (Tr. 585-89).  When asked about these assessments, the VE testified that there were no jobs Mrs. Herald could perform.  (Tr. 71-2).

The opinion of a treating source such as Dr. Kelly is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  If the treating source opinion is not given controlling weight, the ALJ "must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."  Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).  There "remains a presumption, albeit

a rebuttable one, that the opinion of a treating physician is entitled to great deference." Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007). The ALJ must always give "good reasons" for the weight given the treating physician opinion. Wilson, 378 F.3d at 433, citing § 404.1527(d)(2).

In the present case, the ALJ partially discounted Dr. Kelly's opinions based on language in § 404.1527(e), that opinions that a claimant is "disabled" or "unable to work" are not medical opinions because they are administrative findings which are dispositive of a case. (Tr. 18). As the plaintiff points, out, Dr. Kelly provided specific functional restrictions, not a conclusory statement that the plaintiff was disabled, rendering § 404.1527(e) inapplicable. However, the ALJ went on to cite two more reasons for discounting Dr. Kelly's opinion: (1) that he had based his knowledge of the plaintiff's condition on the June 27, 2006 MRI, and her condition had clearly changed following her second back surgery on September 8, 2006; and (2) Dr. Kelly incorrectly believed that the plaintiff had been compliant with treatment.

On the first point, while Dr. Kelly did cite the June 27, 2006 MRI in support of his findings, he additionally cited medication side effects which would prevent the plaintiff from concentrating, driving or operating machinery. (Tr. 378, 588). Medication side effects (the plaintiff was taking Percocet among other drugs) are a factor to be considered under § 404.1529(c)(3). Dr. Kelly did not support his opinion merely by reference to the MRI; he additionally provided a narrative statement

11-32  Bobbie Rae Herald

indicating that the plaintiff's low back surgery had failed, resulting in elevated low back and leg pain and numbness and weakness of the lower extremities. (Tr. 587). His physical examination of November 7, 2008 also produced some objectively abnormal findings, such as diminished sensation in the left foot and right thigh, a "mildly" antalgic gait, sacroiliac joint dysfunction resulting in protrusion of the left hip, moderate tenderness with detectable muscle spasm, a somewhat reduced lumbar range of motion, and mildly positive straight leg raising on the left, albeit "greatly improved." (Tr. 527). Because of these factors, it was erroneous to imply that Dr. Kelly was basing his opinion only on the June 26, 2006 MRI.

Regarding Dr. Kelly's belief that the plaintiff had been compliant with treatment, the ALJ countered with three items. First, he asserted that the physician had advised the plaintiff to contact patient assistance to obtain the medication Neurontin, but that she failed to follow through. (Tr. 18). A note from a nurse-practitioner in Dr. Kelly's office from March 19, 2009 does state that Mrs. Herald failed to contact patient assistance. (Tr. 520). However, at the April 9, 2009 administrative hearing, the plaintiff testified that she was taking Neurontin six times a day (Tr. 378), so the situation had presumably been resolved. It is also worth noting that the plaintiff been taking Neurontin on prescription from Dr. Kelly or other physicians since her initial visit on August 1, 2006 (Tr. 394-418, 520-40), so she was clearly compliant with taking the medication for the bulk of the time she was

under treatment by Dr. Kelly.  Second, the ALJ criticized the plaintiff for not having a third back surgery (fusion) and stated that it was unclear whether she had "explored it at all."  (Tr. 18).  The plaintiff testified that her sister had had a fusion and she thought it made her worse.  (Tr. 55).  She also stated that Dr. Rohmiller's request that she have a new MRI before proceeding with the fusion was impossible to fulfill because she did not have the money to pay for it.  (Tr. 56).  Dr. Rohmiller's last available note does indicate that he wanted to see the MRI scan before proceeding with surgery.  (Tr. 390).  In addition, there is the previously-cited statement by Dr. Kelly that such surgery tends to have a poor outcome.  (Tr. 377).  Third, the ALJ cited physical therapy notes from November, 2006 showing that Mrs. Herald had canceled two physical therapy appointments and failed to keep two appointments in less than a month.  (Tr. 18, 313-16).  While from Dr. Rohmiller's notes it appears that the plaintiff may have been trying to care for a sister who was in a coma during this period (Tr. 319-20), there is no direct explanation for her lack of cooperation.  Taken as a whole, however, the court cannot agree that the ALJ provided "good reasons" for declining to accept the treating source opinion.  Nor did the ALJ proceed to weigh the treating source opinion as described in 20 C.F.R. § 404.1527(d)(2).  Instead, he largely accepted the opinions of the non-examining reviewers, Drs. Swan and Gregg.  (Tr. 18).  As previously described, these sources did not have access to all of the evidence, a factor of great importance in

12

11-32  Bobbie Rae Herald

determining whether the non-examining sources can be given more weight than treating specialists.  Rogers, 486 F.3d at 245 n. 4; Social Security Ruling 96-6p.[1]

Accordingly, a remand will be required for further consideration.

This the 1st day of February, 2012.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[1]The Commissioner argues in his brief that Dr. Kelly could also be discounted because he erroneously believed that Mrs. Herald had never returned to work following her second surgery, although she briefly did.  (Tr. 391, 526).  Even if this would have been a good reason for discounting Dr. Kelly's opinion, the ALJ did not make it.  The ALJ is charged with "comprehensively set[ting] forth the reasons for the weight assigned to a treating physician's opinion."  Wilson, 378 F.3d at 545 (citation omitted).